**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **BETTY BLACK,** *on behalf of herself* *and all others similarly situated,* | § § § | |
| *Plaintiffs,* | § § | **Civ. A. No. 3:10-cv-1418** |
| **v.** | § § | |
| **SETTLEPOU, P.C.,** | § § | |
| *Defendant.* | § § § § | |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

GILLESPIE, ROZEN & WATSKY P.C.
3402 Oak Grove Avenue, Suite 200
Dallas, Texas 75204
Phone:  214.720.2009
Fax:  214.720.2291

Joseph H. Gillespie
State Bar No. 24036636
James D. Sanford
State Bar No. 24051289

ATTORNEYS FOR PLAINTIFF

# TABLE OF CONTENTS

I.    SUMMARY OF BLACK'S CONTENTIONS..............................................2

    A. As a matter of undisputed fact and law, SettlePou misclassified Betty Black
       as exempt under the FLSA and improperly denied her overtime ...................................2

    B. As a matter of undisputed fact and law, the proper method to calculate Betty
       Black's owed overtime is by multiplying her hours over 40 in a workweek
       by 1.5 times her regular rate ...............................................................6

II.   STATEMENT OF THE FACTS ........................................................9

    A. General Background Facts..........................................................9

    B. SettlePou has made no effort to know or comply with the FLSA
       regarding its classification of paralegals as exempt or nonexempt.............................9

    C. SettlePou's stated basis for claiming Black was exempt under FLSA
       is that she Supervised Two or More Employees.............................................11

    D. Black did <u>not</u> supervise two other employees.............................................12

    E. Looking past the fact that Black did not supervise two employees, she does
       not qualify for any other FLSA exemption as she lacked any real authority and
       had no independent discretion and independent judgment with respect to
       matters of significance ...................................................................13

    F. SettlePou has already offered a non-conditional judgment to opt-in class
       member Renee Vasquez who was similarly misclassified as exempt by
       SettlePou – this is an admission of misclassification in this case...............................14

    G. SettlePou pays its nonexempt salaried employees overtime at the rate of
       150% of their regular rate and any attempt by SettlePou to utilize a
       fluctuating workweek basis for calculating Black's overtime damages
       would be contrary to the undisputed evidence.............................................15

III.  ARGUMENT AND AUTHORITIES...............................................................17

    1. Summary judgment is proper if there is no genuine dispute as to
       SettlePou's misclassification of Black as an "exempt" employee or as to
       the method of calculating Black's overtime damages .................................17

    2. It is SettlePou's burden to show that it properly classified Black as "exempt"
       under the FLSA and SettlePou has not plead the affirmative defense of an
       exemption under the FLSA .....................................................................18

3.   No recognized exemption applies to Black, and SettlePou cannot show that it properly classified Black as "exempt" under the FLSA .........................19

a.   SettlePou cannot establish that Betty Black supervised two or more employees ........................................................................................................20

b.   SettlePou cannot establish that Betty Black's primary duty was the management of the enterprise in which she was employed or a customarily recognized subdivision or department thereof ..................................21

c.   SettlePou cannot establish that Betty Black had authority to hire or fire employees or that her suggestions regarding hiring or firing were given particular weight .....................................................................................23

d.   SettlePou cannot establish that Black should be considered exempt under the "administrative" exemption ...............................................................23

4.   SettlePou has agreed to an unconditional judgment in favor of opt-in Plaintiff Renee Vasquez – this further establishes that SettlePou has misclassified its exempt paralegals...........................................................................................25

5.   It cannot be disputed that the correct method for calculating Black's owed overtime involves multiplying her hours worked over 40 in a workweek times 1.5 her regular rate ................................................................................................25

IV.   CONCLUSION.................................................................................................................28

CERTIFICATE OF SERVICE ..................................................................................................29

# TABLE OF AUTHORITIES

**Cases**

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 (1960) ..................................................... 18

*Bazan v. Hidalgo Cty.*, 246 F.3d 481 (5th Cir. 2001) .................................................. 17

*Blackmon v. Brookshire Grocery Company*, 835 F.2d 1135 (5th Cir. 1988) .............................. 26

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................. 17

*Conne v. Speedee Cash of Mississippi, Inc.*, 246 F. App'x. 849 (5th Cir. 2007) ................... 25, 27

*Corning Glass Works v. Brennan*, 417 U.S. 188 (1974)....................................................... 18

*Dalheim v. KDFW-TV*, 918 F.2d 1220 (5th Cir.1990)........................................................ 18, 22

*EZPawn Fair Labor Standards Act Litigation*, 633 F.Supp.2d 395 (W.D. Tex. 2008) .............. 26

*Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992) ....................................... 17

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) ............................................. 17

*Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622 (5th Cir. 1998) ....................... 17

*Pfeil v. Intecom* Telecomms., 90 F. Supp. 2d 742 (N.D. Tex. 2000).......................... 17

*Rainey v. McWane Inc.*, 314 F. App'x. 693 (5th Cir. 2009)........................................ 22

*Samson v. Apollo Resources, Inc.*, 242 F.3d 629 (2001) ..........................................26-27

*Tait v. Barbknecht & Tait Profit Sharing Plan*, 997 F. Supp. 763 (N.D. Tex. 1997).................. 17

*Talbert v. Am. Risk Ins. Co., Inc.*, 405 F. App'x. 848 (5th Cir. 2010) ......................... 18

*Tyler v. Union Oil Co. of Calif.*, 304 F.3d 379 (5th Cir.2002) ..................................... 18

## Statutes

29 U.S.C. § 201 et seq.................................................................................................... 1
29 U.S.C. § 207(a) .................................................................................................. 6, 18

## Rules

Federal Rule of Civil Procedure 56(c) ...................................................................... 17

## Regulations

29 C.F.R. § 541.100 ....................................................................................2, 10, 19-20
29 C.F.R. § 541.100 (a)(3)............................................................................................ 3
29 C.F.R. § 541.100(a)(4)....................................................................................... 4, 23
29 C.F.R. § 541.102 .................................................................................................... 21
29 C.F.R. § 541.104 .............................................................................................3, 20-21
29 C.F.R. § 541.104(d) ................................................................................................. 4
29 C.F.R. § 541.200 ............................................................................................... 19-20
29 C.F.R. § 541.200(3) and §541.202(e) ...................................................................... 6
29 C.F.R. § 541.300 ...................................................................................................... 5
29 C.F.R. § 541.301(e)(7).............................................................................................. 5
29 C.F.R. § 541.700(a).................................................................................................. 22
29 C.F.R. § 778.114 ............................................................................................... 25, 27

## Other Authority

*Opinion Letter Fair Labor Standards Act*, July 24, 2006, 2006 WL 2792441............................ 24
*Opinion letter of the DOL* 1991 WL 11648489................................................................... 27
*Opinion letter of the DOL* 1995 WL 1032466................................................................... 27
*Opinion letter of the DOL*, 1999 WL 1002415................................................................. 27
*Opinion letter of the DOL*, 2006 WL 1488849................................................................. 27

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **BETTY BLACK,** *on behalf of herself* *and all others similarly situated*, | § § § | |
| *Plaintiffs*, | § § | **Civ. A. No. 3:10-cv-1418** **(Kinkeade, J.)** |
| **v.** | § § | |
| **SETTLEPOU, P.C.,** | § § | |
| *Defendant*. | § § | |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE ED KINKEADE:

Plaintiff Betty Black ("Black") moves for summary judgment on her claims for unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.[1]  While the amount of time that Defendant SettlePou, P.C. ("SettlePou") failed to compensate may be in dispute, there can be no genuine dispute that the law firm of SettlePou misclassified Black as "exempt" from the FLSA's coverage.  Consequently, Black is entitled to judgment as a matter of law as to SettlePou's liability for unpaid overtime.  Similarly, as a matter of fact and law, there can be no dispute regarding the manner of calculating Black's overtime using a rate of 1.5 times her regular rate for all hours over 40 in a workweek.  Consequently, Black is entitled to judgment as a matter of law as to the method of calculating Black's unpaid overtime.

---

[1] Along with this motion for partial summary judgment, Black intends to file a motion for leave to reopen the class notice period in this case and for related relief.  Late into the discovery period in this case, Plaintiff discovered that SettlePou and its counsel have had interactions with the prospective opt-in class members that likely influenced the class members' decisions to not opt-in to this litigation.  This includes a meeting held by SettlePou wherein lead counsel for SettlePou in this case spoke to the potential opt-ins about the case and the notice process.  Because this is a complex and important issue, and one that would not be dispositive, Plaintiff will be filing the motion later this week after the dispositive motions deadline.

## I.   SUMMARY OF BLACK'S CONTENTIONS

**A.      As a matter of undisputed fact and law, SettlePou misclassified Betty Black as exempt under the FLSA and improperly denied her overtime**

Black, and the other "legal assistants" at SettlePou, are clearly nonexempt under the FLSA and should be considered eligible for overtime whenever they work over 40 hours in any workweek.  FLSA regulations and all opinion letters from the Department of Labor for the last several decades have made it crystal clear that paralegals are almost uniformly considered nonexempt.  There is no legitimate excuse for the law firm of SettlePou P.C. to have not done even a cursory review of the regulations, Department of Labor materials, or even a simple Google search to discover that paralegals, unless they are highly skilled with special advanced degrees used to assist the firm (such as a doctor or nurse paralegal assisting medical malpractice defense attorneys or an engineer assisting an IP firm) are not exempt under the FLSA.  The only possible motive for SettlePou's disregard of clearly established law – especially given Betty Black's repeated complaints about misclassification and requests for the firm to review the law and change her classification – is the firm's illegal effort to boost its shareholder profits by underpaying its hardest working employees.

During her employment, and throughout this litigation, the only argument that SettlePou has come forward with as to why Black was considered "exempt" is that she allegedly supervised two or more employees at SettlePou.  This appears to be an attempt by SettlePou to rely upon the "executive" exemption under the FLSA as codified at 29 C.F.R. §541.100.  There are huge problems with this defense by SettlePou.  First, Betty Black never supervised two or more employees while at SettlePou.  In fact, she barely supervised *one* employee and was terminated after complaining about her (Black's) continued misclassification by SettlePou and

her inability to actually supervise the insubordinate employee she supposedly supervised.[2]   In this litigation, SettlePou's partners and founders, Jay Settle, Robert Pou, and David O'Dens have all testified that Betty Black supervised two legal secretaries: (1) Michelle Shed and (2) Glenda Davis.   These SettlePou attorneys' sworn testimony is directly contradicted by Betty Black, who has testified she never supervised Glenda Davis and merely *tried* to supervise Michelle Shed. Black was never once told while at SettlePou that she supervised, or was supposed to supervise, Glenda Davis.   Furthermore, Glenda Davis, who testified she is a hostile witness against Betty Black, admitted in her deposition this past Friday that she was *never* supervised by Betty Black. Glenda Davis also testified that she was *never* told by anyone at SettlePou that Betty Black was her supervisor.   This uncontroverted evidence, directly from Ms. Davis herself, establishes without doubt that SettlePou's attorneys' testimony that Black supervised Ms. Davis is false and done in a transparent effort to establish some semblance of a defense in this overtime and retaliation litigation.

Second, a required subpart of the "executive" exemption requires the exempt employee to "customarily and regularly direct the work of two or more other employees."[3]   As with most phrases within the FLSA regulations, we are not left to guess what "two or more other employees" means because it is defined within 29 C.F.R. §541.104.   Specifically, the regulations are painfully clear that if supervision of a full-time employee is *shared* among supervisors than the, "shared supervision of the same two employees in the same department does not satisfy this

---

[2] There are numerous material fact disputes surrounding SettlePou's retaliatory termination of Black, which came on the heels of repeated complaints by her of misclassification and requests to be changed to nonexempt.  Black's last several complaints of misclassification, which SettlePou's witnesses now either do not remember or choose to forget, dealt with Black's continued struggle to "supervise" an insubordinate legal secretary and Black's efforts to have actual supervisory authority to discipline the insubordinate legal secretary or change Black's classification to the proper classification of nonexempt under the FLSA.   This is direct evidence of causation.  Because of the numerous fact issues regarding Black's retaliatory discharge claim, summary judgment is improper on that claim and Black does not move for such summary judgment within this partial motion for summary judgment.
[3] 29 C.F.R. §541.100 (a)(3).

requirement."[4] While Ms. Black (and indeed Ms. Davis herself) dispute that Black supervised

Michelle Shed *and* Glenda Davis, it is undisputed that even if Black did supervise these two

employees, several attorneys and other employees *shared* supervision of these two employees.

For instance, it is undisputed that Ms. Davis was at least supervised by Robert Pou and Marsha

Dekan.  So even if Ms. Black did supervise Ms. Davis, that supervision was shared with *at least*

two other people and under the regulations Ms. Davis would count as 1/3[rd] a person in the "two

or more other people" prong of the "executive" exemption.   It is also undisputed *by SettlePou*

that Michelle Shed was supervised by: (1) attorney Marsha Dekan, (2) attorney Robert Pou, (3)

attorney Barry Johnson and (4) legal assistant Betty Black.   Therefore, even under the undisputed

evidence by SettlePou, Ms. Shed would count as 1/4[th] a person under the "two or more other

people" requirement of the regulations.   Put simply, under *any* review of the undisputed facts,

Ms. Black did not supervise even one whole person under the terms of the FLSA, let alone "two

or more" as SettlePou's attorneys have falsely alleged in this litigation.[5]

Third, the FLSA exemption regulation's subparts are joined by the term "and" instead of

"or" and SettlePou must establish each prong of the exemption they rely upon in claiming the

defense that Black was exempt under the FLSA.  The fourth prong of the "executive" exemption

requires that the exempt employee, "has the authority to hire or fire other employees or whose

suggestions and recommendations as to hiring, firing, advancement, promotion or another other

change of status of other employees are given particular weight."[6] In this case, SettlePou's

admissions and each deponent stated that Betty Black did not have authority to hire or fire

employees.  Indeed, in continuing to complain about SettlePou's misclassification of Black and

---

[4] 29 C.F.R. §541.104(d).

[5] Given the ratio of attorneys, legal assistants, and legal secretaries within SettlePou, it is abundantly clear that no legal assistant within SettlePou can possibly supervise two or more other employees as required by the FLSA to qualify as exempt under the "executive" exemption.

[6] 29 C.F.R. §541.100(a)(4).

requesting that the insubordinate Michelle Shed be terminated, SettlePou instead chose to retaliate against Black and terminate Black.   Black's disciplinary recommendation had the opposite of having "particular weight", her suggestion and continued complaint was used by SettlePou to terminate Black for an alleged violation of the firm's admittedly subjective "core values" which it could implement whenever and however it wanted.   Again, under any view of the evidence, SettlePou cannot establish each prong of the "executive" exemption and Black was clearly intentionally misclassified by SettlePou.

Even if SettlePou attempts to come forward at this late juncture with new shifting arguments that Betty Black should be considered exempt under a different FLSA exemption, such as the "administrative" exemption[7] or the "professional employees" exemption[8], such arguments would also fail miserably.   For one thing, the regulations themselves state that paralegals and legal assistants generally do not qualify as exempt learned "professionals" for many reasons that would be applicable to all the paralegals at SettlePou.[9]   SettlePou did not require its legal assistants to have college degrees, paralegal degrees, or any advanced paralegal certificates.   Betty Black, despite years in the legal industry, has no college degree and no paralegal degree.   SettlePou knew this when it hired Black and knew this when it improperly changed her from nonexempt legal assistant to exempt.   The regulations also state, as it relates to "administrative" exempt employees that, the employee's primary duty must include the exercise of "discretion and independent judgment with respect to matters of significance," and that this, "does *not* include clerical or secretarial work, recording or tabulating data, or performing other

---

[7] 29 C.F.R. §541.200.

[8] 29 C.F.R. §541.300.

[9] *See* 29 C.F.R. §541.301(e)(7), "Paralegals and legal assistants generally do not qualify as exempt learned professionals because an advanced specialized academic degree is not a standard prerequisite for entry into the field. Although many paralegals possess general four-year advanced degrees, most specialized paralegal programs are two-year associate degree programs from a community college or equivalent institution…"

mechanical, repetitive, recurrent or routine work."[10]   It is undisputed that the task Betty Black primarily handled at SettlePou was the creation of routine loan transaction documents based upon forms that SettlePou repeatedly used for its clients.   Such repetitive and routine work, while requiring skill and attention to detail, does not meet the requirements of the regulations as specifically stated within the regulations themselves.   Furthermore, all work done by Betty Black and the other legal assistants at SettlePou required (and had) the direct oversight and review of an attorney so that mistakes could be corrected and so that the firm would not improperly use its legal assistants to practice law in Texas without a license.   Finally, the Department of Labor has for decades issued numerous opinion letters, all of which can be easily found online, emphatically stating that paralegals and legal assistants are not considered exempt.   For all of these reasons, it is beyond doubt that SettlePou misclassified Betty Black and the other paralegals at SettlePou as exempt under the FLSA.   Because there are no material fact disputes that could possibly classify Black as exempt, summary judgment is proper and the Court should find as a matter of law that SettlePou misclassified Betty Black under the FLSA and that she should have been classified as nonexempt, and eligible for overtime.

**B.      As a matter of undisputed fact and law, the proper method to calculate Betty Black's owed overtime is by multiplying her hours over 40 in a workweek by 1.5 times her regular rate**

As stated within this Court's February 14, 2011 Order granting conditional certification and notice, "[t]he FLSA requires covered employees to pay non-exempt employees at least 150% of the employees' normal hourly pay for each hour the employee works in excess of forty hours per workweek."[11]   This is the "default" setting under the FLSA and it is the presumed method for calculating owed overtime.     Indeed, SettlePou's own handbook establishes SettlePou's

---

[10] 29 C.F.R. §541.200(3) and §541.202(e).

[11] Docket No. 23, p. 3, citing to 29 U.S.C. §207(a).

understanding that this default setting is the same method SettlePou uses to calculate overtime
when it states:

> For non-exempt employees, hours worked in excess of 40 hours during a standard
> workweek <u>will be paid at the rate of time and a half</u>.[12]

In this litigation, SettlePou had never once mentioned that it felt that Ms. Black, if found
to be considered nonexempt, should be compensated at anything other than 150% of her normal
rate.   That inexplicably changed this past week during the deposition of SettlePou's human
resources director Kimberly Williams.   In Ms. Williams' deposition, Defendant's *counsel* (not
Ms. Williams) stated in an objection, "I think your client, if anything, is going to get half time,
She's not getting time and a half."[13]   Other than this improper objection during the course of a
deposition, SettlePou has not plead any "fluctuating workweek" defense and no witness has
provided testimony supporting any possible claim for a fluctuating workweek payment of owed
overtime in this case.

Aside from the **written policy** of SettlePou establishing that its clear understanding with
all employees is that nonexempt employees are compensated at 1.5 times their regular rate for
any work over 40 in a workweek, Ms. Williams, the director of human resources for SettlePou
testified that: (1) all nonexempt paralegals are paid for overtime at 1.5 times their regular rate,
(2) the firm has actually changed some paralegals from exempt to nonexempt status and they
were then paid overtime at 1.5 times their regular rate, and (3) the firm expects its exempt
employees to work a full-time schedule and if an employee has exhausted their applicable leave
days that they would be docked pay from their salary or asked to take an unpaid leave of
absence.[14]   In other words, if an exempt or nonexempt employee does not work a full workweek,

---

[12] SettlePou Handbook p. 18, App 30, 118.

[13] Williams deposition 119:4-22, APP 277.

[14] Williams deposition 154:5—155:19, App. 280-81.

they will get docked for pay.  There is no understanding with SettlePou employees that they can work less than a full week and still get paid at their full salary.

SettlePou and Ms. Black clearly, and unequivocally, did not have a mutual understanding that Black was to be paid on a fluctuating workweek basis.  It is undisputed that SettlePou's written policy is to pay nonexempt employees overtime based upon the standard 150% payment of wages for those hours worked over 40 in a workweek.  It is undisputed that SettlePou would deduct pay from Black and other misclassified exempt paralegals if they ran out of leave days and could not work a full 37.5 hour workweek.  It is undisputed that SettlePou never paid Black 0.5 times her regular rate for any hours she worked over 40 in a workweek.  It is also undisputed that SettlePou has no system in place for accurately tracking its exempt employees hours to ensure payment of overtime at 0.5 times their regular rate.  Basically, if SettlePou seeks to use a fluctuating workweek basis for calculating Ms. Black's damages in this case, it would be asking the Court to treat Ms. Black as different than any other SettlePou nonexempt employee and it would be asking the Court to employee a fluctuating workweek analysis, in order to save SettlePou substantially in damages, despite their being zero evidence that supports a fluctuating workweek application to the facts in this case.

Because SettlePou cannot possibly establish a legitimate reason to treat Ms. Black as being subject to a fluctuating workweek calculation, and to ensure that SettlePou does not attempt to confuse the jury with this newly raised wholly incorrect argument, Black moves for summary judgment as to how to calculate her owed overtime and asks that the Court find as a matter of law and fact that if Ms. Black is found to have been misclassified by SettlePou, that the proper manner for calculating Ms. Black's owed overtime in this case is at the standard 150% rate for all hours worked over 40 in any given workweek, just like SettlePou's written policy for non-exempt employees.

## II.    STATEMENT OF THE FACTS

### A.    General Background Facts

1.      SettlePou P.C. is a law firm of approximately 30 attorneys and handles transactional, litigation, and regulatory matters.  Among the firm's practice areas are Commercial Lending, Commercial Litigation, Creditor's Rights, Insurance Defense, Real Estate Transactions, and Business Counseling services.[15]

2.      Prior to her termination, Ms. Black was employed by SettlePou as a "legal assistant" and classified by SettlePou as exempt.[16]

3.      SettlePou calls its paralegals either "paralegals" or "legal assistants" and use those terms interchangeably.[17]

### B.    SettlePou has made no effort to know or comply with the FLSA regarding its classification of paralegals as exempt or nonexempt

4.      Attorney Robert Pou has been employed by SettlePou for 31 years, is a founding partner of the firm, and is a named partner.  In those 31 years, Mr. Pou has never undertaken any efforts to learn the Fair Labor Standards Act and how it would apply to SettlePou employees.  Mr. Pou has made no efforts to determine whether Ms. Black was properly classified under the FLSA.[18]

5.      Attorney John "Jay" Settle has been employed by SettlePou for 31 years, is a founding partner of the firm, and is a named partner.   Like Mr. Pou, Mr. Settle has not been a part of any effort during his 31 years at the firm to evaluate the classification of paralegals as exempt or nonexempt under the law.  Mr. Settle claims to have no understanding as to why Ms. Black was considered exempt by SettlePou.[19]

---

[15]  Black November 22, 2010 Declaration ¶2, App 71.
[16]  Black November 22, 2010 Declaration ¶6, App 72.
[17]  O'Dens deposition 8:13-25, App 205.
[18]  Pou deposition 5:3-9, 12:20-24, 41:10—42:120, App. 232-33, 238-39.
[19]  Settle deposition 5:1-10, 7:19-22, 19:14-17, App. 250-41, 254.

6.      Attorney and shareholder David O'Dens has been employed by SettlePou for more than 20 years, is the division head for the creditors rights section, and was on the Personnel Committee that discussed Ms. Black's written request to be change from exempt to nonexempt sometime during February or March of 2010.[20]   In the February or March 2010 Personnel Meeting regarding Ms. Black's request, the committee did not review any FLSA regulations at all.[21]  Mr. O'Dens verified all three sets of interrogatory responses that Defendant provided in response to Plaintiff's first set of interrogatories in this case.   In answering Plaintiff's Interrogatory No. 5, which asks for the reasons why SettlePou considered Black exempt under the FLSA, O'Dens answered this interrogatory and verified the response based upon his own knowledge of the FLSA but did not review any federal regulations or use any reference materials or verify with Human resources why Ms. Black was considered exempt by SettlePou. O'Dens did not review any FLSA regulations as they relate to Betty Black until he prepared the second set of supplemental responses to Plaintiff's First Set of Interrogatories.[22]

7.      On its third version of these sworn interrogatory responses, O'Dens changed SettlePou's answer to Interrogatory No. 5 regarding the reasons for Black being considered exempt under the FLSA.   The change was made to correct the first two versions of the answer that stated that Black was considered exempt because she was paid a salary amount of more than $250 per week.   The new answer stated that Black received a salary of more than $455 per week.   The answer also added that SettlePou believed in good faith that Black was exempt under the FLSA.[23]   The first two versions of sworn interrogatories that reference Black receiving a salary of more than $250 per week apparently were based upon a reference to 29 C.F.R. §541.100 and/or §541.200, which were both amended in April 2004 and changed part of the salary test for

---

[20] O'Dens deposition 7:2-11; 20:23—25:1, Ex. 3, App 204, 206a-211, 141.

[21] O'Dens deposition 29:5-20, App 212.

[22] O'Dens deposition 52:21-25; 55:10-56:1, 56:11—57:20, Ex. 7, Ex. 8, Ex. 9, App 213-16, 147-84.

[23] O'Dens deposition 55:10—58:6, Ex. 7, Ex. 8, Ex. 9, App 214-16, 150, 159, 173.

these exemptions from $250 per week to $455 per week.  It is evident that even in responding to interrogatories in this litigation, that SettlePou made no effort to look up the FLSA regulations that they claim applied to Betty Black and support SettlePou's defense that she was exempt under the FLSA.

8.      Kimberly Williams, SettlePou's Director of Human Resources, does not recall *any* discussion at the February or March 2010 Personnel Committee meeting, regarding Black's exempt versus nonexempt status, about the FLSA rules and why someone would be considered exempt instead of nonexempt. As Director of HR for SettlePou, Williams does not have workplace laws reference materials at her desk and she has never attempted to do any research regarding the exempt versus nonexempt status of paralegals.  She has never gone to the Department of Labor's website to look for information about the proper classification of paralegals and she has never done even a Google search for such information.[24]

**C.      SettlePou's stated basis for claiming Black was exempt under FLSA is that she Supervised Two or More Employees**

9.      In February or March 2010, when SettlePou's Personnel Committee discussed Ms. Black's request to be changed from exempt to non-exempt, the Committee claims that it determined that her status should not be changed because Black was supervising two or more people and it was not necessary to change her status.[25]

10.      O'Dens, who was on the Personnel Committee that discussed Black's complaint of misclassification, does not recall discussing who the two or more employees were that Ms. Black supervised.[26]

11.      O'Dens does not recall the personnel committee discussing whether Ms. Black was *actually* supervising Ms. Shed or not.[27]

---

[24] Williams deposition 53:4—56:12, App. 272-75.
[25] O'Dens deposition 21:17—22:12, App. 207-08.
[26] O'Dens deposition 23:5-9, App. 209.

12.     Other than discussing that Ms. Black supervised two or more employees, the Personnel committee did not discuss *any* other elements or qualifications that would make Black considered to be exempt under the FLSA.[28]

**D.     Black did <u>not</u> supervise two other employees**

13.     SettlePou claims that Black supervised Michelle Shed and Glenda Davis.[29]

14.     Robert Pou supervised the work done by legal secretaries Michelle Shed and Glenda Davis.  Mr. Pou admits that any supervision Ms. Black had of Ms. Shed and Ms. Davis would have been a shared supervision.[30]

15.     Mr. Pou admits that Ms. Davis reported to attorneys Carl Morgan, Jay Settle, Marsha Dekan and Robert Pou.[31] Mr. Settle also admits that Davis reported to him, Marsha Dekan, and Mr. Pou.[32]

16.     The extent of the "supervision" that Ms. Black allegedly had over Ms. Davis was requesting that Ms. Davis open files, make copies, and gather information from the Secretary of State. Ms. Black's "supervision" over Ms. Shed consisted of the same activities, only more so. [33]

17.     Ms. Davis, who is no longer with SettlePou, testified that she reported to Robert Pou and Marsha Dekan and considered them her supervisors.  She also testified that Ms. Black was **not** one of her supervisors at SettlePou and that Ms. Williams (the HR director), Ms. Black, nor anyone else at SettlePou had ever told her that she was supervised by Betty Black.[34]

---

[27] O'Dens deposition 24:3-7, App. 210.

[28] O'Dens deposition 23:10-14, App. 209.

[29] Settle deposition 9:13-16, App. 252; O'Dens deposition 57:7-22; 74:13-25, App. 216, 220.

[30] Pou deposition 16:11—17:6, App. 236.

[31] Pou deposition 43:6-18, App. 240.

[32] Settle deposition 9:13-17, App. 252.

[33] Settle deposition 9:17—10:17, App. 252-53.

[34] Davis deposition 16:5-20, 37:6-8, App 290, 293.

18.    During her deposition, Ms. Davis produced a document with a list of definitions that she had found on the internet for "supervision" and she again restated that Ms. Black had supervised Michelle Shed at SettlePou but that Black did not supervise Davis "at all" while at SettlePou.[35]

19.    Ms. Davis also testified that she gave up her job of 9 years at SettlePou because of tremendous stress and "micromanagement" from attorney Marsha Dekan.[36]

**E.     Looking past the fact that Black did not supervise two employees, she does not qualify for any other FLSA exemption as she lacked any real authority and had no independent discretion and independent judgment with respect to matters of significance**

20.    SettlePou's legal assistants/paralegals work under the ultimate direction and supervision of an attorney or attorneys.[37]

21.    All work done by Ms. Black on a loan package for a SettlePou client had to go through an attorney who would review the work before it went to the client.  SettlePou has a policy that all client related documents require "two sets of eyes" and must be reviewed and approved by an attorney.  Betty Black did not have authority to work on a loan package and fully complete the job by herself without sending the work through an attorney for review.[38]  SettlePou's policy of "two sets of eyes" for such documents is in place to catch errors and to have the documents reviewed by an attorney so that the firm's paralegals are not attempting to practice law without a license.[39]

22.    Black did not have authority to terminate a client relationship at SettlePou.[40]

23.    Black did not have authority to negotiate contracts on behalf of SettlePou.[41]

24.    Black did not formulate SettlePou's firm policy on any front or anything.[42]

---

[35] Davis deposition 35:18—36:19, Ex. 36, App 291-92, 186.
[36] Davis deposition 38:15—39:15, Ex. 37, App 294-95, 187.
[37] O'Dens deposition 9:1-24, Ex. 1 App 206, 118.
[38] Pou deposition 14:21-25, 15:4-16, App. 234-35.
[39] Settle deposition 49:3-24, App. 261.
[40] Settle deposition 43:12-15, App. 255.
[41] Settle deposition 43:22-24, App. 25.

25.     Black did not take part of any formal review, or formal performance evaluation, of any other employees at SettlePou.[43]

26.     Black did not have authority to make decisions regarding other employees' compensation.[44]

27.     Black did not have authority to discipline other employees.[45]

28.     Black did not have authority to hire other employees.[46]

29.     SettlePou does not require its legal secretaries or legal assistants to have college degrees or paralegal degrees or certificates.[47]

**F.     SettlePou has already offered a non-conditional judgment to opt-in class member Renee Vasquez who was similarly misclassified as exempt by SettlePou – this is an admission of misclassification in this case**

30.     SettlePou alleges that it decided to classify Renee Vasquez as exempt when she began supervising two or more employees.[48]   This is the same argument SettlePou relies upon for its classification of Betty Black.   SettlePou made an unconditional offer of judgment to Renee Vasquez and that offer has been accepted and filed with the Court in this case.   SettlePou's offer of judgment contains no denial of liability provisions and would not have been accepted by Ms. Vasquez if it had been anything other than an unconditional judgment against SettlePou P.C. for willfully violating the FLSA by misclassifying her.[49]

---

[42]   Settle deposition 43:23—44:2, App. 255-56.

[43]   Settle deposition 45:2-25, App. 257.

[44]   Settle deposition 46:1-3, App. 258.

[45]   Settle deposition 46:4-8, App. 258.

[46]   Settle deposition 46:15-17, App. 258.

[47]   O'Dens deposition 60:13—61:14, App 218-19.

[48]   O'Dens deposition 78:4—79:8, App 221-22.

[49]   Docket Nos. 28, 28-1, 28-2, and 28-3 filed on July 15, 2011.

**G.      SettlePou pays its nonexempt salaried employees overtime at the rate of 150% of their regular rate and any attempt by SettlePou to utilize a fluctuating workweek basis for calculating Black's overtime damages would be contrary to the undisputed evidence**

31.      SettlePou has a written policy to pay overtime for nonexempt employees at a rate of 1.5 times their regular rate for all hours over 40 worked in a standard workweek.[50]

32.      When asked her "understanding" of the proper calculation for an employee's overtime rate, SettlePou's director of human resources testified the proper rate is time and a half and indeed has made calculations regarding Black's potential overtime damages in this matter at this rate.[51]

33.      Ms. Williams also testified that she was not aware of any fluctuating workweek agreement between SettlePou and Ms. Black.  Furthermore, all paralegals considered nonexempt by SettlePou are paid at an overtime at the rate of 1.5 times their regular rate and that is how the firm's payroll system is setup.[52]

34.      Before Black was classified as exempt by SettlePou, she was paid overtime at the rate of time and a half.[53]

35.      Ms. Williams is unaware of any agreement between the firm and Ms. Black that she would be paid half time for her hours worked over 40 in a workweek.[54]

36.      If a nonexempt employee of SettlePou exhausted their leave days and had to miss work and not work a full workweek, SettlePou would dock that employee's pay.   If an exempt

---

[50] O'Dens deposition 9:1-10, Ex. 1 p. 18, App 206, 118.
[51] Williams deposition 118:2—119:12, Ex. 33, App. 276-77, 185.
[52] Williams deposition 121:9—122:1, App. 278-79.
[53] Williams deposition 122:2-9, App. 279.
[54] Williams deposition 153:24--2, App. 279a.

employee exhausted their leave days and had to miss work and not work a full workweek, SettlePou would require that exempt employee to take an unpaid leave of absence.[55]

37.   Betty Black had an understanding that SettlePou calculated overtime for all of its nonexempt employees by paying them 1.5 times their regular rate for any hours worked over 40. She was never once told by anyone at SettlePou that it uses or used a fluctuating workweek basis for calculating any employees' overtime.   Black was never once told by anyone at SettlePou that the firm paid any employee 0.5 times their regular rate for overtime hours.[56]

38.   As a nonexempt legal assistant, Betty Black was compensated for any hours spent over 40 in a workweek at an overtime rate of 1.5 times her regular rate.[57]

39.   When Betty Black was "promoted" to exempt legal assistant, her salary and benefits did not increase.   She was told that the promotion was so that SettlePou would not have to pay her overtime.   She protested and asked to be changed back to nonexempt status.[58]

40.   SettlePou never had a clear mutual understanding with Betty Black that she would be compensated for overtime hours at anything less than 1.5 times her regular rate.   After being misclassified by SettlePou, Black complained numerous times to SettlePou in an effort to have SettlePou reclassify her properly as nonexempt so she would be paid 1.5 times her regular rate for her overtime.    SettlePou terminated Black for her repeated complaints regarding misclassification.[59]

41.   As a full-time employee, which Betty was at SettlePou even when she was an exempt legal assistant, she understood that[60] SettlePou expected her and all full time employees, as defined within the firm handbook, to work 37.5 hours a week and that if she did not work 37.5

---

[55] Williams deposition 154:5—155:19, App. 280-81.
[56] Black declaration ¶5, App. 3.
[57] Black declaration ¶7, App. 4.
[58] Black declaration ¶8, App. 4.
[59] Black declaration ¶9, App. 4.
[60] Black declaration ¶11, App. 5.

hours a week and had exhausted her leave time, that SettlePou would dock her pay for any

missed work.  Black's clear understanding was that she was expected to work 37.5 hours per

week and if she failed to do so, it would cost her.

### III.    ARGUMENTS AND AUTHORITIES

**1.      Summary judgment is proper if there is no genuine dispute as to SettlePou's misclassification of Black as an "exempt" employee or as to the method of calculating Black's overtime damages.**

Federal Rule of Civil Procedure 56(c) mandates summary judgment when a party "fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial."[61]  The moving party bears

the initial burden of identifying those portions of the pleadings and discovery in the record that it

believes demonstrates the absence of a genuine issue of material fact.[62]  It is not, however,

"required to negate the elements of the nonmoving party's case."[63]  Instead, the "party opposing

summary judgment must identify specific evidence in the record and articulate the precise

manner in which that evidence supports [its] claim."[64]

An issue of fact is "'genuine' if it is real and substantial, as opposed to merely formal,

pretended, or a sham."[65]   Although evidence must be viewed in the light most favorable to the

nonmoving party, "only reasonable inferences can be drawn from the evidence in favor of the

nonmoving party."[66]   Thus, the nonmovant does not satisfy its burden by raising "some

---

[61]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).
[62] *Leps v. Farmers Ins. Exchange*, No. 3:09-cv-0780-K, *3 (N.D. Tex. Jun. 15, 2010)(Kinkeade, J.)(citing *Celotex*, 477 U.S. at 323).
[63] *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998).
[64] *Pfeil v. Intecom Telecomms.*, 90 F. Supp. 2d 742, 746 (N.D. Tex. 2000).
[65] *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001)(emphasis in original).
[66] *Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n. 14 (1992)(emphasis in original).

metaphysical doubt as to material facts," by making conclusory allegations and unsubstantiated assertions, by speculating, or by submitting "only a scintilla of evidence."[67]

**2.      It is SettlePou's burden to show that it properly classified Black as "exempt" under the FLSA and SettlePou has not plead the affirmative defense of an exemption under the FLSA**

The FLSA requires that employees be paid at a rate of one and one-half times their regular rate for hours worked in excess of 40 in one week unless they are subject to certain enumerated exemptions.[68]The burden of proving that an employee is exempt from §207(a) falls squarely on the employer.[69] An exemption must be asserted as an affirmative defense to a claim under the FLSA.[70] Exemptions are "construed narrowly against the employer seeking to assert them," and the employer bears the burden of proving that employees are exempt.[71] The actual day-to-day job activities of the employee are relevant to determining whether the employee is exempt employees under the FLSA, not the labels the employee or the employer place on those duties.[72]

In this case, SettlePou has failed to plead any affirmative defense stating that Betty Black or any other legal assistant at SettlePou was subject to an exemption under the FLSA.[73] Therefore, the Court may determine that SettlePou has waived its defense, by failing to affirmatively plead an exemption, and determine without going further, that SettlePou has failed to pay Betty Black overtime as a nonexempt employee under the FLSA.

---

[67] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Tait v. Barbknecht & Tait Profit Sharing Plan*, 997 F. Supp. 763, 768 (N.D. Tex. 1997).

[68] 29 U.S.C. §207(a).

[69] *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974).

[70] *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). Talbert v. Am. Risk Ins. Co., Inc., 405 F. App'x. 848, 851 (5th Cir. 2010).

[71] *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir.1990) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960)).

[72] *See, e.g., Tyler v. Union Oil Co. of Calif.*, 304 F.3d 379, 404 (5th Cir.2002).

[73] Defendant's Original Answer - Docket No. 3, filed on August 9, 2010.

**3.      No recognized exemption applies to Black, and SettlePou cannot show that it properly classified Black as "exempt" under the FLSA**

Looking beyond SettlePou's failure to affirmatively plead the defense of an exemption under the FLSA, in the depositions in this case, the only reason SettlePou's witnesses could state as to why SettlePou classified Black as exempt under the FLSA was that she supervised two or more employees.   Within SettlePou's sworn interrogatories, SettlePou stated that Black was considered exempt because:

> she customarily and regularly directed the work of two or more other employees, earned a salary of more than $250.00 per week, her primary duties consisted of tasks associated with management of a customarily recognized department or subdivision of Defendant's enterprise and regularly exercised meaningful discretion and independent judgment regarding decisions on significant matters.[74]

This stated reason appears to be a blending by SettlePou of two exemptions found under the statutory regulations.    Specifically, SettlePou appears to be attempting to rely upon the "executive" exemption found within 29 C.F.R. §541.100 and the "administrative" exemption found within 29 C.F.R. §541.200, which state:

**29 C.F.R. §541.100 (emphasis added)**

(a) The term "employee employed in a bona fide **executive** capacity" in section 13(a)(1) of the Act shall mean any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;

> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

> (3) Who customarily and regularly directs the work of two or more other employees; **and**

---

[74] Defendant's Responses to Plaintiff Betty Black's First Interrogatories p. 4, Defendant's First Supplemental Responses to Plaintiff Betty Black's First Interrogatories p. 4, and Defendant's Second Supplemental Responses to Plaintiff Betty Black's First Interrogatories p. 4.  Within the third version of these responses, Defendant changed $250.00 to $455.00 and added a sentence stating it believed it believed in good faith that Plaintiff was exempt under the FLSA. (Exhibits 7, 8, and 9 to O'Dens deposition)(App. 150, 159, 173)

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.[75]

**29 C.F.R. §541.200 (emphasis added)**

(a) The term "employee employed in a bona fide **administrative** capacity" in section 13(a)(1) of the Act shall mean any employee:

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; **and**

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.[76]

Under each of these potential exemptions, SettlePou cannot overcome several facts that defeat their claimed exemption.

**a.      SettlePou cannot establish that Betty Black supervised two or more employees**

Within the "executive" exemption it is required that the employee customarily and regularly direct the work of two or more other employees.  The meaning of "two or more other employees" is defined within 29 C.F.R. §541.104:

(a) To qualify as an exempt executive under § 541.100, the employee must customarily and regularly direct the work of two or more other employees. The phrase "two or more other employees" means two full-time employees or their equivalent. One full-time and two half-time employees, for example, are equivalent to two full-time employees. Four half-time employees are also equivalent.

(b) The supervision can be distributed among two, three or more employees, but **each such employee must customarily and regularly direct the work of two or more other full-time employees or the equivalent. Thus, for example, a department with five**

---

[75] 29 C.F.R. § 541.100 (emphasis added)

[76] 29 C.F.R. § 541.200 (emphasis added)

**full-time nonexempt workers may have up to two exempt supervisors if each such supervisor customarily and regularly directs the work of two of those workers**.

(c) **An employee who merely assists the manager of a particular department and supervises two or more employees only in the actual manager's absence does not meet this requirement.**

(d) Hours worked by an employee cannot be credited more than once for different executives. Thus, **a shared responsibility for the supervision of the same two employees in the same department does not satisfy this requirement.** However, a full-time employee who works four hours for one supervisor and four hours for a different supervisor, for example, can be credited as a half-time employee for both supervisors.[77]

In this case, it is beyond doubt that Betty Black did not supervise two or more employees as defined by the regulations.  First, she has produced testimony from Glenda Davis, who emphatically testified that was never supervised by Betty Black.  Second, even assuming the Court looks past Davis' testimony because SettlePou's attorneys claim that Betty Black did supervise Glenda Davis, there is undisputed evidence from those same attorneys that any supervision of Glenda Davis and Michelle Shed by Betty Black was a "shared supervision" by several other attorneys.  Under the clear language of the regulations, because supervision of Glenda Davis and Michelle Shed was "shared supervision" with several other supervisors, Betty Black did not actually supervise two or more employees and SettlePou cannot rely upon the "executive" exemption.  Therefore, as a matter of law, SettlePou misclassified Betty Black.

> **b.     SettlePou cannot establish that Betty Black's primary duty was the management of the enterprise in which she was employed or a customarily recognized subdivision or department thereof;**

Under the "executive" exemption, SettlePou must establish that Betty Black's primary duty was the management of the department she worked in.  Management is defined under 29 C.F.R. §541.102 as:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of

---

[77] 29 C.F.R. § 541.104 (emphasis added).

work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

An employee's primary duty is "the principal, main, major or most important duty that the employee performs."[78] In applying this definition, courts look to the aspect of the employee's job that is "of principal value to the employer."[79] "Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."[80]

In this case, it is undisputed that Betty Black's primary duty was the task of creating loan documents using firm forms and new data related to the firm's clients.[81] Even though Mr. O'Dens declaration submitted on January 3, 2011 contains many contradictions from his deposition testimony in this case, it still admits that SettlePou contends Black's discretion and independent judgment was used for the "drafting of client documents."[82] This task, which consumed most of her time and was the task that provided the most value to SettlePou of all of her services, has nothing to do with "management" as defined under the regulations. Because the drafting of client documents using standard firm forms does not equate to "management"

[78] 29 C.F.R. § 541.700(a).
[79] *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir.1990).
[80] § 541.700(a). Rainey v. McWane Inc., 314 F. App'x. 693, 695 (5th Cir. 2009).
[81] *See* Declaration of Betty Black ¶7, App. 73.
[82] *See Declaration of David O'Dens* ¶16 Doc. 16 p. 8, App. 193.

under the FLSA, Black cannot be considered exempt under the "executive" exemption and summary judgment is appropriate.

**c.     SettlePou cannot establish that Betty Black had authority to hire or fire employees or that her suggestions regarding hiring or firing were given particular weight**

SettlePou has not stated within its sworn interrogatory answers the fourth prong of the executive exemption which requires that the exempt employee have authority to hire or fire other employees or have whose suggestions are given particular weight.[83]   SettlePou has admitted within its responses to requests for admissions that Betty Black did not have authority to hire, terminate, determine the compensation rate, or discipline other employees.[84]   When Black did attempt to discipline another employee, Michelle Shed, for insubordination and when she did so in the context of a continued complaint about SettlePou's misclassification of herself as exempt, SettlePou terminated her.   This is the opposite of giving her suggestions particular weight, and is further evidence that she is not an exempt employee under the "executive" exemption.   For this reason, and because SettlePou cannot establish several of the required elements of the exemption, summary judgment is appropriate.

**d.     SettlePou cannot establish that Black should be considered exempt under the "administrative" exemption**

Another possible, but unplead and unstated argument by SettlePou is that Black should be considered exempt under the "administrative" exemption.   SettlePou has failed to state in its interrogatory responses that Black's primary duty was the performance of office or nonmanual work directly related to the management or general business operations of the employer or the employer's customers.   This is the second prong of the "administrative" exemption.   The third

---

[83] 29 C.F.R. §541.100(a)(4).
[84] Defendant's Answers to Requests for Admission Nos. 29, 30, 31, and 32; App. 305.

prong of the "administrative" exemption requires that the employee exercise discretion and independent judgment with respect to matters of significance.

The Department of Labor has issues numerous opinion letters over the years regarding paralegals and they have all determined that paralegals should be considered nonexempt. Attached hereto as Exhibit C within Plaintiff's appendix are copies of Department of Labor opinion letters dated, November 10, 1994, April 13, 1995, February 19, 1998, March 20, 1998, December 16, 2005, July 24, 2006, and January 1, 2007.  In each of these letters, the Department of Labor has looked closely at whether paralegals should be considered exempt and in each case, the Department confirmed its longstanding belief that paralegals should generally be considered nonexempt absent very special circumstances.  The DOL typically responds to the paralegal or firm posing the question with the statement:

> [W]e do not believe that your duties and responsibilities as a Senior Legal Analyst meet the "discretion and independent judgment in matters of significance" requirement. Typically, you draft particular documents to assist attorneys on a particular case or matter. It appears that your duties and responsibilities as a Senior Legal Analyst are performed through the use of particular skills and knowledge in researching and preparing reports, and that it is the attorneys who exercise discretion and independent judgment because they receive and decide whether or how to act on the information in your reports.[85]

Each time the DOL has been questioned about a paralegal's status, the determination has been that though skilled, the repetitive tasks and direct (indeed required) oversight by a supervising attorney do not rise to the level of an exemption under the "administrative" exemption.  For these same reasons, Black's primary task of drafting documents under the oversight and supervision of SettlePou attorneys establishes that Betty Black should be considered nonexempt and summary judgment is appropriate.

---

[85] Opinion Letter Fair Labor Standards Act, July 24, 2006, 2006 WL 2792441.

4.      **SettlePou has agreed to an unconditional judgment in favor of opt-in Plaintiff Renee Vasquez – this further establishes that SettlePou has misclassified its exempt paralegals**

In this case, SettlePou made an unconditional offer of judgment to plaintiff Renee Vasquez.  This offer has been accepted and filed with the Court and the Clerk, pursuant to the rules, shall enter judgment.  SettlePou's offer was not given with any conditions and did not contain any language stating that the offer denied liability or that it was not an admission of wrongdoing.  As such, the judgment obtained by Renee Vasquez is further evidence that SettlePou, under the law of this case, has misclassified its exempt legal assistants, including Black.

5.      **It cannot be disputed that the correct method for calculating Black's owed overtime involves multiplying her hours worked over 40 in a workweek times 1.5 her regular rate**

SettlePou's unplead and late-disclosed effort to apply the "fluctuating workweek" method (also called "FWW method") for calculating Black's overtime damages in this matter at 0.5 times her regular rate instead of 1.5 times her regular rate for hours worked over 40 in any given workweek should be summarily denied.  The FFW method refers to 29 C.F.R. §778.114 which has been interpreted by the Fifth Circuit to mean:

> An employer may pay an employee pursuant to this method where: (1) the employee's hours fluctuate from week to week; (2) she receives a fixed weekly salary, regardless of the number of hours worked that week; (3) "the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate"; (4) "the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek"; and (5) the employee receives a 50 percent overtime premium in addition to the fixed weekly salary for all hours in excess of 40 worked that week.[86]

The Fifth Circuit has also stated that 29 C.F.R. §778.114 is specific that there must be a "clear mutual understanding of the parties" that the fixed salary is compensation (apart from overtime

---

[86] *Conne v. Speedee Cash of Mississippi, Inc.*, 246 F. App'x. 849, 851 (5th Cir. 2007).

premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly period.[87]  There is also a very persuasive argument set out in the Western District case of *In re Texas EZPawn Fair Labor Standards Act Litigation*, that the FWW method cannot, and should not, be used in misclassification cases and that the 1988 opinion of the Fifth Circuit in *Blackmon v. Brookshire Grocery Company* is wrongly decided and contained no explanation or effort to analyze the relevant statutory and regulatory language.[88] While not binding on this Court, the *EZPawn* case is highly persuasive and provides and excellent summary of the FWW method and its use in misclassification cases.

But even applying the ruling of *Blackmon*, which was a fact specific case, this Court should easily find that the application of the FWW is wholly inappropriate in this case because the intent of SettlePou to use a standard rate of 150% for payment of overtime to its nonexempt employees is evident within its own employee handbook that clearly states this firm policy and method for calculating overtime.  Therefore, even under *Blackmon*, the parties clear intent was to pay overtime at a rate of 150% to all nonexempt employees and SettlePou, as the party who misclassified Betty Black as exempt, should not be allowed to pay Black at an overtime rate of 50% instead of 150%.

Furthermore, the written policy of SettlePou goes on to state that employees that are considered exempt are paid a salary for their full-time employment, which is defined as 37.5 hours per week and that they will receive no compensation or overtime compensation above and beyond their salary.  Again, this is the opposite of a FWW agreement that (1) would require that SettlePou first classify Black as nonexempt and (2) would require an agreement (and actual payment of) overtime wages at 0.5 times the employees' regular rate.  The written policy of

---

[87] *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636 (2001).
[88] *In re EZPawn Fair Labor Standards Act Litigation*, 633 F.Supp.2d 395, 405-406 (W.D. Tex. 2008); citing to *Blackmon v. Brookshire Grocery Company*, 835 F.2d 1135, 1138 (5th Cir. 1988).

SettlePou makes it clear there is no FWW agreement or method used with SettlePou for *any* employee, let alone Betty Black.   Because SettlePou cannot establish a clear *mutual* understanding that the parties had a FWW agreement during her employment, SettlePou cannot legitimately ask the Court to allow this method on the eve of trial in order to greatly reduce its potential liability in this litigation.

Other than the fact that SettlePou cannot establish a clear mutual understanding of a FWW method for calculating overtime, SettlePou cannot get around the fact that SettlePou's policy is to <u>deduct pay from its employees if they exhaust their leave days</u>.   This practice is fundamentally incompatible with any claim to have a FWW method for calculating employees' overtime because the FWW compensates employees for each week at a standard salary even if the employees were to work very few hours in the week.   The longstanding position of the Department of Labor is that an employee cannot utilize a fluctuating workweek method if it makes deductions from an employee's salary for absences occasioned by the employee.[89]   This longstanding position of the DOL of labor has been recognized by the Fifth Circuit in *Samson v. Apollo Resources, Inc.* and *Conne v. Speedee Cash of Mississippi, Inc.* and comports with clear language of 29 C.F.R. 778.114 which only allows the FWW method to be used if the employee receives a fixed salary "regardless of the number of hours worked that week".[90]   Clearly, if SettlePou deducts pay from employees or asks them to take an unpaid leave of absence when they have exhausted their leave days, there is not an agreement or mutual understanding to pay the employees a fixed salary "regardless of the hours worked that week."

---

[89] *See* the May 12, 2006 Opinion letter of the DOL, 2006 WL 1488849; the May 28, 1999 Opinion letter of the DOL, 1999 WL 1002415; the February 27, 1995 Opinion letter of the DOL 1995 WL 1032466; and the August 20, 1991 Opinion letter of the DOL 1991 WL 11648489.   Each letter holds that an employer cannot utilize a FWW method for calculating overtime if the employee also makes deductions from employees' salaries for missing work as the FWW method can only be utilized when an employee is paid a fixed salary for all hours worked, many or few, within a workweek.

[90] *Conne v. Speedee Cash of Mississippi, Inc.*, 246 Fed.Appx. 849, 850 (5th Cir. 2007); *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 638-40 (5th Cir. 2001); and 29 C.F.R. 778.114.

In addition to not having any FWW policy or practice, the facts are clear that SettlePou's clear understanding of how it pays its employees is based upon a standard payment of 150% of the employees' regular rate for all hours over 40 worked in a workweek.   For instance, SettlePou's human resources director testified that all employees at SettlePou that are paid overtime are paid at 150% of their regular rate, that is how the computer system used by SettlePou calculates overtime, and that is her understanding of how overtime is calculated.  Ms. Williams also testified that paralegals who were formerly exempt but then changed to non-exempt because they no longer supervised two or more employees were paid overtime at 1.5 times their regular rate.[91]   It would be incredible, and a miscarriage of justice, if SettlePou is allowed to use the FWW to calculate damages in this case when it does not use that method for any other employee and such method would be contrary to its own written policies.   Because there are no legitimate disputed facts regarding this issue, summary judgment is appropriate and Black asks that the Court find that damages for her owed overtime compensation in this litigation be calculated using the standard rate of 150% of her regular rate for all hours worked over 40 hours in any given workweek.

## IV.   CONCLUSION

For the above and foregoing reasons, there are no legitimate fact issues that preclude the Court from ruling as a matter of law that SettlePou misclassified Betty Black and that she should have been classified as nonexempt under the FLSA.   Furthermore, because SettlePou's own testimony clearly establishes that it does not have a clear mutual understanding with its employees that exempt employees will be paid a fixed salary regardless of how few or how many hours are worked, and because SettlePou has a stated practice of deducting pay from employees if they work less than 40 hours in a workweek, the fluctuating workweek method of calculating

---

[91]  See statement of facts paragraphs 32-36.

overtime is inappropriate in this case and the Court should use the FLSA's default method of calculating damages by multiply by 1.5 times Black's regular rate for any hours worked over 40 in any given workweek.

Date:   August 8, 2011                   Respectfully submitted,

                                         Gillespie, Rozen & Watsky, P.C.
                                         3402 Oak Grove Ave., Suite 200
                                         Dallas, Texas 75204
                                         Tel:    214.720.2009
                                         Fax:    214.720.2291

                                         By:   /s/ Joseph H. Gillespie
                                               Joseph H. Gillespie
                                               *Attorney-in-charge*
                                               Tex. Bar No. 24036636
                                               josephgillespie@grwlawfirm.com
                                               James D. Sanford
                                               Texas Bar No. 24051289
                                               jsanford@grwlawfirm.com

                                         **ATTORNEYS FOR PLAINTIFF
                                         BETTY BLACK**

### CERTIFICATE OF SERVICE

The undersigned certifies that on August 8, 2011 he electronically submitted the foregoing document to the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court.  The electronic case files system sent a "Notice of Electronic Filing" to the following individuals, who have consented in writing to accept this Notice as service of this document by electronic means: Keith A. Clouse, Esq., and Emily M. Stout, Esq., of CLOUSE DUNN, LLP.

                                         /s/ Joseph H. Gillespie
                                         One of Plaintiff's Counsel