UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BETTY BLACK, on behalf of herself and on behalf of all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | NO. 3:10-CV-1418-K |
| SETTLEPOU, P.C., | § § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Plaintiff's Motion for Entry of Final Judgment ("the Motion for Judgment") (Doc. No. 149) and Plaintiff's Motion for Attorneys' Fees and Costs on Remand ("the Motion for Attorneys' Fees") (Doc. No. 151). The Court has considered the motions, the briefing of the parties, the materials submitted by the parties, and the applicable law. For the following reasons, the Court hereby **GRANTS in part and DENIES in part** the Motion for Judgment and **GRANTS in part and DENIES in part** the Motion for Attorneys' Fees.

### I.    Factual and Procedural Background

In July of 2010, Plaintiffs brought claims against Defendant SettlePou, P.C. ("SettlePou") for unpaid overtime and retaliation pursuant to the Fair Labor Standards Act ("FLSA"). Approximately two weeks prior to trial, SettlePou admitted to misclassifying Plaintiff Betty Black ("Ms. Black") as an exempt paralegal for purposes of the FLSA. On

1

November 7, 2011, the Court called this case for trial. After a four-day trial, the jury

returned a unanimous verdict on November 10, 2011, in favor of Ms. Black as to her unpaid

overtime claim. That same jury unanimously found against Ms. Black on her claim for

retaliation. The jury found that SettlePou willfully violated the FLSA in failing to pay Ms.

Black overtime pay required by law and that Ms. Black was entitled to overtime pay for 274

hours. Based on an hourly wage stipulated by the parties, the Court entered judgment in this

case on January 20, 2012, awarding $3,957.93 in actual damages, an equal amount as

liquidated damages, and post-judgment interest to Ms. Black. This damage award was based

on a half-time calculation rather than a one-and-a-half time calculation, an issue heavily

contested by the parties.

After judgment was entered, Ms. Black filed her Motion to Alter or Amend Judgment

and her Motion for Attorney's Fees and Costs. On August 24, 2012, this Court entered an

order denying Plaintiff's Motion to Alter or Amend Judgment and awarded her $45,000 in

attorneys' fees. Plaintiff appealed both of these decisions. The Fifth Circuit Court of Appeals

vacated the damages and fees awarded and remanded for recalculation of damages and fees.

On remand, Plaintiff filed the instant Motion for Judgment and Motion for Attorneys' Fees.

In addition to the fee request that was considered on appeal (Doc. No. 118), Ms. Black

seeks a supplemental fee award for work done on her case after February 3, 2012.

## II.    The Motion for Judgment

The Court first considers the Motion for Judgment. "After the trier of fact has found

that a misclassified employee is due overtime pay, the court must determine as a matter of

2

law whether to apply the standard method of calculating the amount of overtime pay using the one and one-half times the regular rate of pay multiplier found in the FLSA, or to apply the [Fluctuating Work Week ("FWW")] multiplier of only one-half the regular rate of pay." *Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013). The FWW method of calculating overtime is appropriate "when the employer and the employee have agreed that the employee will be paid a fixed weekly wage to work fluctuating hours." *Id.* at 498. When there is no such agreement, the standard multiplier applies. *Id.* In this case, the Fifth Circuit determined that Ms. Black had not agreed to a fixed weekly wage to work fluctuating hours. *Id.* at 498–501. Rather, she agreed to work 37.5 hours per week for a fixed weekly wage. *Id.* Because she did not agree to a fixed weekly wage to work fluctuating hours, Ms. Black's actual damages must be calculated using the standard multiplier of one and one-half times the regular rate of pay.

The jury found that Ms. Black is entitled to overtime pay for 274 hours, and the parties stipulated that her hourly wage was $28.89. When the standard multiplier is applied to Ms. Black's hourly wage, her overtime rate of pay becomes $43.335 per hour. Multiplying $43.335 by the 274 unpaid hours of overtime she worked, Ms. Black is entitled to recover $11,873.79 in actual damages for the overtime hours for which she was not compensated. Ms. Black is further entitled to an equal award of $11,873.78 in liquidated damages because the jury found that SettlePou willfully violated the FLSA by misclassifying Ms. Black as exempt. *Id.* at 501; 29 U.S.C. § 216(b).

The Court must next decide when post-judgment interest begins to run. Ms. Black

argues that it must run from the date of the original judgment so that she may be compensated for the time spent on appeal. SettlePou argues that Fifth Circuit precedent dictates interest must run from the new judgment. The Court agrees with SettlePou. The Fifth Circuit has consistently held that post-judgment interest runs from the date of a post-remand judgment unless the mandate specifically states that it must run from the date of the original judgment. *See, e.g., Vickers v. Chiles Drilling Co.*, 882 F.2d 158, 159 (5th Cir. 1989) (per curiam); *Reaves v. Ole Man River Towing, Inc.*, 761 F.2d 1111, 1112 (5th Cir. 1985). The mandate in this case included no direction on the date from which post-judgment interest should run, so it will accrue from the date of the post-remand judgment.

In addition to actual damages, liquidated damages, and interest, the Motion for Judgment requests attorneys' fees and costs. Ms. Black makes these same requests in more detail in the subsequently-filed Motion for Attorneys' Fees. The Court will only address these requests once, and considers the requests for attorneys' fees and costs found in the Motion for Judgment to be subsumed by the later-filed Motion for Attorneys' Fees. The Court **grants** to Ms. Black actual damages, liquidated damages, and interest. Ms. Black's request that interest accrue from the date of the original judgment is **denied**.

III.    **The Motion for Attorneys' Fees**

A.    **The Applicable Law**

The Court next considers the Motion for Attorneys' Fees. The Fifth Circuit follows the lodestar method for determining the reasonableness of attorneys' fees. *Black*, 732 F.3d at 502. The Court's first step is to determine the compensable hours listed in

4

the attorneys' time records. *See Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993). To facilitate this determination, the fee request submitted to the court should include "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). Time charged for work that is "excessive, duplicative, or inadequately documented" should be excluded. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). In dealing with such surplusage, the Court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application. *See Kirsch*, 148 F.3d at 173.

The party seeking a fee award bears the burden of showing the reasonableness of the hours billed. *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006) (citing *Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002)). "There is no mathematical formula to precisely calibrate the number of hours reasonably necessary for . . . representation." *Leroy v. City of Hous.*, 906 F.2d 1068, 1083 (5th Cir. 1990). The Court should determine reasonableness using "its common sense, informed by years of experience with briefing and arguments . . . ." *Id.* The party seeking a fee award must also show that billing judgment was exercised. *Saizan*, 448 F.3d at 799. "Billing judgment requires documentation of the hours charged and the hours written off as unproductive, excessive, or redundant." *Id.* If evidence of billing judgment is not submitted, a fee award should be reduced accordingly by a percentage intended to substitute for the exercise of billing judgment. *Id.*; *Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 770

(5th Cir. 1996). Generally, as part of its reasonableness-and-necessity burden, the prevailing party must show that it incurred the subject fees while suing the losing party "on a claim which allows recovery of such fees." *Rappaport v. State Farm Lloyds*, No. 00-10745, 2001 WL 1467357, at *3 (5th Cir. Oct. 6, 2001) (citing *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991)). The fee applicant must distinguish successful from unsuccessful claims, carve out the fees incurred to prosecute the successful claims, and limit its application to those fees only. *Rappaport*, 2001 WL 1467357, at *3; *see also United States v. Reid* & *Gary Strickland Co.*, 161 F.3d 915, 919 (5th Cir. 1998) (party requesting attorneys' fees carries the burden of proof and the duty to segregate fees).

Once the compensable time is determined, the court's second step is to select "an appropriate hourly rate based on prevailing community standards for attorneys of similar experience in similar cases." *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993). Just as with the hours billed, the party seeking fees bears the burden of establishing the market rate and should present the court with evidence showing the reasonableness of the proposed rate. *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir.1996). The appropriate hourly rate is generally established through affidavits of other attorneys practicing in the community. *Tollett v. City of Kemah*, 285 F.3d 357, 368-69 (5th Cir. 2002). In addition, the trial court may use its own expertise and judgment to independently assess the value of an attorney's services. *Davis v. Bd. of Sch. Comm'rs of Mobile County*, 526 F.2d 865, 868 (5th Cir. 1976).

6

After determining the number of compensable hours and the appropriate hourly rate, the court multiplies one by the other to produce the "lodestar" amount. *Shipes*, 987 F.2d at 319. The court may then increase or decrease the lodestar based on the 12 factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). While the results obtained is the most critical factor in determining the amount of a fee award, the award need not be precisely proportionate to the result obtained. *Saizan*, 448 F.3d at 802-03 & n.42; *see also Powell v. Carey Int'l., Inc.*, 547 F.Supp.2d 1281, 1286 (S.D.Fla. 2008) ("Given the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of judgment in the case.").

Briefly, the factors a court may consider in reducing or enhancing the lodestar ("the *Johnson* factors") are: 1) the time and labor involved; 2) the novelty and difficulty of the questions; 3) the skill required to perform the legal services properly; 4) the preclusion of other employment by the attorney due to the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of counsel; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. However, a court may only adjust the lodestar up or down based on relevant *Johnson* factors not already included in calculating the lodestar. *Shipes*, 987 F.2d at 320. Put simply, after calculating the lodestar amount, the district court may then apply the remaining *Johnson* factors to determine if the lodestar should be adjusted. *Id.* (stating that the court must be careful

not to double count a *Johnson* factor already considered in calculating the lodestar).

## B.    Analysis

Ms. Black requests two different lodestars to compensate her attorneys, Mr. Joseph Gillespie ("Mr. Gillespie") and Mr. James Sanford ("Mr. Sanford"), for their work on this case. She first seeks an award of $232,400.81 for the 573.10 hours Mr. Gillespie and Mr. Sanford worked through February 3, 2012 ("the Original Lodestar"). She seeks an additional $140,741.25 for 337.82 hours spent after February 3, 2012 ("the Supplemental Lodestar").

### 1.    The Original Lodestar

This is the second time this Court has considered Ms. Black's request for attorneys' fees for work done through February 3, 2012, the filing of Ms. Black's final post-trial motion ("the Original Lodestar"). In an order dated August 24, 2012, this Court previously found that the 573.10 hours requested by Ms. Black for work done through February 3, 2012 were reasonable and supported by the evidence. In this same order, the Court also approved hourly rates of $450 for Mr. Gillespie and $375 for Mr. Sanford. These findings create an Original Lodestar amount of $232,400.81. The Court's findings as to compensable hours and hourly rates were not challenged on appeal.

After concluding that the Original Lodestar was reasonable, the Court applied the *Johnson* factors. The Court found that the only *Johnson* factor that supported a reduction in the Original Lodestar was the results obtained. All other *Johnson* factors either

counseled for an enhancement, were already considered in the Original Lodestar, or did not "warrant additional adjustments." On appeal, the only issue raised as to the *Johnson* factors was whether the Court erred in reducing the Original Lodestar based solely on the eighth factor – the amount involved and the results obtained. Neither party appealed the Court's decision regarding application of the other 11 *Johnson* factors. Stating that a court may not reduce the lodestar amount solely on the basis of the amount involved and results obtained, the Fifth Circuit vacated this Court's attorneys' fee award. Taking into account the Fifth Circuit's determinations and conclusions in this case, the Court reconsiders the application of the *Johnson* factors to the Original Lodestar, specifically whether the eighth factor alone supports a reduction.

As the Fifth Circuit recognized, this Court found that 11 of the 12 *Johnson* factors either: (1) supported an enhancement of the requested fees; (2) were already considered in the Original Lodestar; or (3) did not warrant additional adjustments to the Original Lodestar. Because neither party appealed these findings, the Court need not address them again. The Fifth Circuit noted that a court may not rely solely on the results obtained to support a reduction in the lodestar amount. Because the Court already determined that no other *Johnson* factors support a reduction, the Court will not reduce the Original Lodestar calculation of $232,400.81 based only on the relatively small results obtained. The Court **grants** Ms. Black's request for fees through February 3, 2012, and awards Ms. Black the full Original Lodestar of $232,400.81.

## 2.    The Supplemental Lodestar

In addition to the Original Lodestar that was appealed to the Fifth Circuit, Ms. Black requests an additional award of attorneys' fees on remand for the work Mr. Gillespie and Mr. Sanford performed after February 3, 2012. Ms. Black requests a Supplemental Lodestar of $140,741.25 to compensate her attorneys for 337.82 hours of work, which includes time spent drafting reply briefs to her original post-trial motions and working on the appeal to the Fifth Circuit. The Fifth Circuit directed this Court to award an additional attorneys' fee to compensate Mr. Gillespie and Mr. Sanford for their work on the appeal. As with the Original Lodestar, Ms. Black bears the burden of proving the reasonableness of this additional request. *Saizan*, 448 F.3d at 799.

### a.      Reasonableness of the Hourly Rate

The Court first considers the hourly rates of Mr. Gillespie and Mr. Sanford for work done after February 3, 2012. Ms. Black requests they be compensated at the same hourly rates as found reasonable in the Original Lodestar: $450 per hour for Mr. Gillespie and $375 per hour for Mr. Sanford. Though SettlePou argues they should be compensated at a lower rate for work on the appeal, the Court does not agree. Mr. Gillespie has been licensed to practice law in Texas for nearly 12 years, and he has been Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization since December 31, 2007. He is a member of several national, state, and local employment law associations, and has served as an officer of the Dallas Bar Association's Labor and Employment Section Council. Mr. Sanford has practiced law in Texas for almost nine years, and has been Board Certified in Labor and Employment

Law by the Texas Board of Legal Specialization since December 30, 2011. He is also a member of many of the same employment lawyer associations as Mr. Gillespie. The Court has already found the requested rates to be reasonable as they are consistent with the hourly wages of similarly situated attorneys in the Dallas area. "[T]he hourly rate for attorneys' fees on appeal shall be the same as the hourly rate for trial work unless the movant provides sufficient evidence warranting an upward departure." *Miller v. Raytheon Co.*, No. 3:09–CV–440–O, 2013 WL 6838302, at *7 (N.D. Tex. Dec. 27, 2013) (O'Connor, J.). Because Ms. Black has not requested an upward departure, Mr. Gillespie will continue to be compensated at a rate of $450 per hour and Mr. Sanford at a rate of $375 per hour.

### b.      Reasonableness of the Hours Billed

Next, the Court considers the number of hours requested by Ms. Black. She requests her attorneys be compensated for 337.82 hours: 187.45 hours for Mr. Gillespie and 150.37 hours for Mr. Sanford. Mr. Gillespie and Mr. Sanford have written off a total of 34.50 hours as unproductive, redundant, or excessive. While this shows some billing judgment, the Court finds the number of hours written off to be insufficient. *See Saizan*, 448 F.3d at 799. As will be discussed in detail below, both of the issues raised on appeal were extensively researched and briefed before this Court prior to the appeal being taken. As such, a significant number of hours for this work are already included in the Original Lodestar. Ms. Black's counsel did not reasonably require the large amount of time they billed in order to make these same arguments a second time. Additional

evidence of the lack of the correct billing judgment is the inclusion of time spent on clearly clerical tasks. It is within the Court's authority to apply an across-the-board reduction to the fee award when evidence of the correct billing judgment is lacking. *Saizan*, 448 F.3d 799. Though the Court does not see sufficient evidence of the correct billing judgment in the Supplemental Lodestar request, it will not apply an across-the-board reduction at this time. The Court believes the task-specific reductions discussed below sufficiently account for excessive, unproductive, and redundant time. *See Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09–CV–0752–D, 2011 WL 487754, at *4 (N.D. Tex. Feb. 11, 2011) (Fitzwater, C.J.).

### i.   Clerical Work

SettlePou first argues that several hours should be eliminated because Ms. Black seeks compensation for clerical work. Clerical work is not recoverable in an award of attorneys' fees. *See Vela v. City of Hous.*, 276 F.3d 659, 681 (5th Cir. 2001). The Court agrees with SettlePou that hours spent drafting cover letters to the court, calendaring deadlines, filing appearance forms, ordering transcripts, reorganizing case materials, and filing notices of address change are not compensable because they are clerical in nature. *See Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00–CV–0913–D, 2005 WL 6789456, at *12 n.21 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.). Accordingly, the Court will deduct the following hours from Ms. Black's request as the time entries establish the work performed was clerical in nature: .5 hours for work performed by Mr. Sanford on March 7, 2012; .2 hours for work performed by Mr. Sanford on August 15, 2012; .75 hours for

work performed by Mr. Sanford on September 26, 2012; .5 hours for work performed by Mr. Sanford on September 28, 2012; .1 hours for work performed by Mr. Sanford on December 19, 2012; .25 hours for work performed by Mr. Sanford on February 22, 2013; .5 hours for work performed by Mr. Sanford on March 12, 2013; .25 hours for work performed by Mr. Sanford on April 23, 2013; .75 hours for work performed by Mr. Sanford on June 19, 2013; .25 hours for work performed by Mr. Sanford on July 15, 2013; .4 hours for work performed by Mr. Sanford on August 1, 2013; .25 hours for work performed by Mr. Sanford on December 17, 2013; and .1 hour for work performed by Mr. Gillespie on June 17, 2013. **This results in a reduction of 4.7 hours for Mr. Sanford and .1 hour for Mr. Gillespie.**

## ii.      Excessive Time

SettlePou also argues that many of the hours Ms. Black requests are excessive. Ms. Black responds by pointing the Court to the *Miller* case as evidence that her request is reasonable. Ms. Black argues that because the *Miller* court approved a fee award of $141,484.63, then her request for a slightly smaller fee award is also reasonable. The Court does not agree that the instant case is comparable to *Miller* simply because the total amount awarded is comparable to Ms. Black's request. In that case, the party seeking attorneys' fees wrote off at least 38% of the hours expended on the appeal, the appeal covered ten alleged errors, and the attorneys in that case were compensated at significantly higher hourly rates. *Miller*, 2013 WL 6838302, at *1, 9, 11. Comparatively, in this case the hourly rates were significantly lower, only two issues were appealed, and

the attorneys wrote off less than 10% of the time worked. Yet, Ms. Black has requested

nearly as many hours as the *Miller* court found reasonable under these vastly different

facts. Rather than help her cause, the underlying figures in *Miller* arguably support

SettlePou's argument that a significant number of hours that Ms. Black submits were

excessive.

The vast majority of the remaining hours that Ms. Black requests can be lumped

into three categories: (1) time spent preparing appellate briefs; (2) time spent preparing

for appellate oral argument; and (3) time spent preparing reply briefs to post-trial

motions before this Court. Indeed, many of these time entries are so vague that we know

nothing more than that work was expended under one of these broad topics. The Court

is of the opinion that a large number of the hours spent in each of these blocks of time is

excessive, and they will be reduced accordingly.

### a)      Appellate Briefing

First, Ms. Black seeks compensation for 164.6 hours spent preparing her appellate

briefing. Specifically she requests 77.9 hours for Mr. Sanford and 86.7 hours for Mr.

Gillespie. As previously stated, only two issues were appealed: (1) how to properly

calculate Ms. Black's damages; and (2) the award of attorneys' fees. Mr. Gillespie and

Mr. Sanford had already spent 95.65 hours, nearly 12 eight-hour work days, researching

and briefing these two issues for this Court post-trial. This total does not include the

hours they incurred on these points pretrial. Having spent such a significant amount of

time on these two issues, Ms. Black's counsel were intimately familiar with the record

14

and the relevant law. The Court finds that an additional 164.6 hours, or 20.5 eight-hour work days, on these same two issues was far in excess of what was reasonably necessary for attorneys as experienced as Mr. Gillespie and Mr. Sanford to update legal research and recreate existing briefing on these two limited issues.

To put this request in perspective, Ms. Black submits that it took her attorneys a total of 260.25 hours to research and brief two legal issues before two courts. This amounts to 32.5 eight-hour work days, or six and one-half weeks of standard eight-hour work days. According to Ms. Black's submissions, this work began on January 9, 2012. Ms. Black filed her Fifth Circuit reply brief on March 11, 2013. All 260.25 of these hours were spent in a 59-week period, or roughly 14 months. The Court does not find it reasonable that an attorney with the experience of either one of Ms. Black's counsel could spend 11 percent of a 14-month period researching and briefing a mere two legal points, one of which concerned their own compensation.

An in-depth reading of Ms. Black's briefing before both courts supports the Court's finding that the hours she requests are unreasonable. Ms. Black requests 105.25 hours (over two and one-half workweeks) to research and draft just her Fifth Circuit Opening Brief. Ms. Black's time records include 7.2 hours explicitly connected to the FWW issue, 7.65 hours explicitly connected to the issue of attorneys' fees, and 90.4 hours with no indication on which appellate issue they are associated. A careful review of the FWW briefing in front of both courts reveals it is virtually identical. Ms. Black devoted 23 pages of her Fifth Circuit Opening Brief to her FWW argument. Of these 23

15

pages, 21 pages are either copied directly from Plaintiff's Brief Concerning Her Motion to Alter or Amend the Judgment (Doc. No. 114) or the changes are so minor as to be inconsequential. Most changes are simple updates to properly reflect which court Ms. Black is addressing. Additionally, Ms. Black cited only six FWW cases that she had not previously cited to this Court. Of these, only three were decided after this Court's judgment in this case. While it is reasonable and necessary for an experienced attorney to update his research as a case progresses, *see Gohn v. Hill*, No. 4:09–CV–0769–JCH, 2011 WL 1630327, at *4 (E.D. Mo. Apr. 29, 2011), the addition of so few cases indicates that Ms. Black's counsel did not need significant time to stay abreast of the FWW issue. In short, the Court finds Ms. Black's briefing reveals minimal changes and minimal new research occurred on the substantive portion of her argument.

The Court is further concerned with the time reportedly spent working on Ms. Black's Opening Brief because of the vague time descriptions in her request. Based on the time record entries provided to the Court, Ms. Black's counsel arguably could have spent approximately seven hours on the substantive FWW issue and 98 hours on the question of their own compensation. This division of time is facially unreasonable. An award of attorneys' fees "do[es] not typically involve novel or complex legal issues," and it is not so difficult as to require over two weeks of time from such experienced attorneys. *Lewallen v. City of Beaumont*, No. 1:05–CV–733–TH, 2009 WL 2175637, at *9 (E.D. Tex. July 20, 2009) (finding 20 hours reasonable to prepare attorneys' fee application); *Prater v. Commerce Equities Mgmt. Co.*, No. H–07–2349, 2008 WL 5140045, at *7 (S.D. Tex.

Dec. 8, 2008) (finding 30 hours reasonable to prepare attorneys' fee application). On the other side of the potential division of time, Ms. Black's counsel could have spent approximately seven hours working on their fee request and approximately 98 working on the FWW issue. Given the vast similarities in Ms. Black's FWW briefing before both courts, this scenario is also facially unreasonable. Permitting recovery under such a scenario would be as unreasonable as permitting an attorney to recover the time it would take to draft a new document despite utilizing a standard form. *See Merrick v. Scott*, No. 3:10–CV–2172–D, 2011 WL 1938188, at *6 (N.D. Tex. May 20, 2011) (Fitzwater, C.J.). Ms. Black has not met her burden to provide the Court with the information it needs to support a finding that the vast number of hours she requests for her Opening Brief are reasonable and necessary.

Even aside from the duplicative nature of Ms. Black's Opening Brief, the Court cannot adequately evaluate the reasonableness of the hours Mr. Gillespie expended on any of Ms. Black's appellate briefing. Of the 86.7 hours he has billed for work on this task, 47.8 are identified simply as time spent "work[ing] on appellate brief" or "work[ing] on 5th Circuit reply brief." Such vague entries, totaling more than a standard workweek, do not satisfy Ms. Black's burden to establish these hours are reasonable and necessary considering the extensive time Ms. Black alleges was used to research and brief two issues. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326–27 (5th Cir. 1995) (stating that a district court has leeway to accept or reject a fee application when time records are so vague that the court cannot determine the reasonableness of the hours

17

expended).

Given the duplicative nature of the briefing before this Court and the Fifth Circuit, the small number of additional cases counsel had to consider, the extensive time counsel already spent in this Court on the two issues that were appealed, the experience of Ms. Black's counsel, and the Court's own common sense and experience, the Court finds that Ms. Black's counsel could have reasonably completed the appellate briefing in this case in 80 hours of attorney time. *See Leroy*, 906 F.2d at 1083; *see also Gabriele v. Southworth*, 712 F.2d 1505, 1507 (1st Cir. 1983) (finding 72 hours reasonable for an attorney to brief an appeal); *Shepherd v. Dallas Cnty.*, 3:05–CV–1442-D, 2010 WL 2573346, at *3 (N.D. Tex. June 24, 2010) (finding 80 hours reasonable for an attorney with a lower hourly rate to brief a case with eight appellate issues); *Palila (Psittirostra Bailleui) v. Hawaii Dep't of Land & Natural Resources*, 512 F. Supp. 1006, 1010 (D. Haw. 1981) (finding 60 hours reasonable to prepare brief on appeal). The 80 hours the Court finds to be reasonable represents 48% of the 164.6 hours Ms. Black requested for her appellate briefing. Both attorneys' time will be reduced by 52% of the hours they expended on the appellate briefing. **This results in a reduction of 40.5 hours from Mr. Sanford's total and 45.08 hours from Mr. Gillespie's total.**

### b)      Preparation for Appellate Oral Argument

The second block of time the Court will address is the 70.4 hours requested for oral argument preparation. Ms. Black's request includes 23.6 hours for preparation by Mr. Sanford (who did not participate in oral argument) and 46.8 hours for preparation

18

by Mr. Gillespie. For many of the same reasons already discussed, the Court finds this request to be unreasonable.

First, these hours are in addition to the 260.25 hours Ms. Black's counsel had already spent researching and briefing the same two appellate points. By the Court's calculation, this brings the time Mr. Gillespie and Mr. Stanford devoted to two legal issues to 330.65 hours, or eight and one-quarter standard workweeks. Considering the amount of time Mr. Sanford and Mr. Gillespie spent briefing these two issues before this Court and then drafting the appellate briefs on the same two issues, they were more than intimately familiar with the legal and factual issues that would be the focus of oral argument. *See Shepherd*, 2012 WL 2573346, at *3. "A reasonable fee for hours spent preparing for a legal argument should be limited to hours reasonably necessary for a lawyer to become familiarized with the facts and the law pertaining to the issue to be argued, an analysis of the opponent's argument, and questions anticipated to be posed by the court." *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3rd Cir. 2001). Under a fee shifting statute, the losing party is not expected to pay for excessive hours, or hours spent learning or excessively rehearsing appellate advocacy. *Id.* Given her counsel's impressive experience, and their intimate familiarity with the record and the law, the Court does not believe 70 additional hours devoted to oral argument preparation was necessary or reasonable to analyze SettlePou's arguments or anticipate questions the Fifth Circuit might pose.

Second, over 33 of the hours Mr. Gillespie requests are entered simply as

"[p]reparation for oral argument." The Court cannot evaluate the reasonableness of these requested hours, because over half of them are billed in a single 15.5 hour block on August 6, 2013. The lack of any information describing how these hours were spent does not satisfy Ms. Black's burden to establish this time was expended reasonably. The Court finds these entries to be as improperly vague as those in support of time spent on the appellate briefs. *See La. Power & Light Co.*, 50 F.3d at 326–27.

Based on the experience of Ms. Black's counsel, the extensive time already spent researching and drafting these two issues, the vagueness of Mr. Gillespie's time entries, and the Court's own common sense and experience, the Court finds that oral argument preparation could have reasonably been completed in 32 hours. *See Leroy*, 906 F.2d at 1083; *see also Maldonado*, 256 F.3d at 187 (finding 26 hours reasonable to prepare for oral argument); *Ustrak v. Fiarman*, 851 F.2d 983, 987 (7th Cir. 1988) (finding 22 hours reasonable to prepare for oral argument); *Shepherd*, 2012 WL 2573346, at *3 (finding 24 hours reasonable for trial attorney to prepare for oral argument in a case with eight appellate issues); *Palila (Psittirostra Bailleui)*, 512 F. Supp. at 1010 (finding 15 hours reasonable for trial attorney to prepare appellate oral argument). The 32 hours the Court finds to be reasonable represents 45% of the 70.4 hours Ms. Black requested for oral argument preparation. Both attorneys' time will be reduced by 55% of the hours they expended on oral argument preparation. **This results in a reduction of 13 hours from Mr. Sanford's total and 25.75 hours from Mr. Gillespie's total.**

### c)     Post-Trial Reply Briefs

The final block of time the Court takes issue with is the 32.7 hours Ms. Black requests for time spent to prepare two reply briefs filed in this Court prior to her appeal ("the Reply Briefs"). The Reply Briefs were filed after the Original Lodestar was requested, so they were not included in that motion. These hours include 22.8 hours for Mr. Sanford and 9.9 hours for Mr. Gillespie. Combined, the Reply Briefs include 19 pages of argument. The Court finds that it was unreasonable for Ms. Black's attorneys to require over four eight-hour work days to write the Reply Briefs. *See Hayes v. Astrue*, No. 3:09–CV–2018–G (BK), 2010 WL 5479611, at *2 (N.D. Tex. Dec. 3, 2010) (Tolliver, Mag. J.) (finding 4.5 hours reasonable to prepare eight-page reply brief); *Edwards v. Astrue*, No. H–09–0977, 2010 WL 1658399, at *2–3 (S.D. Tex. Apr. 22, 2010) (finding 4.7 hours reasonable to research and draft a reply brief for an attorneys' fee application).

The Court need not rely solely on similar cases to support this conclusion. The requested 32.7 hours were used to research and brief the same FWW and attorneys' fees issues that were appealed to the Fifth Circuit. The Court has already found the time spent on these issues to be excessive. Further, Ms. Black's own request calls into question the necessity of this much time. Ms. Black requested only 6.3 hours to compensate Mr. Gillespie for time required to draft a 10-page reply brief that was never filed with the Fifth Circuit ("the Unfiled Reply Brief"). The Unfiled Reply Brief remains unfiled because the Fifth Circuit unexpectedly ruled as Mr. Gillespie tried to file the document. If Ms. Black's counsel were to complete work on the 19 pages of argument in the Reply Briefs at that same pace as the Unfiled Reply Brief, they would have completed the

briefing in approximately 12.5 hours, less than half of the time Ms. Black requests for the Reply Briefs.

Because of the sheer number of hours Ms. Black has requested to research and brief these two issues throughout the case, the time required to draft the Unfiled Reply Brief, and the findings in similar cases, the Court finds that Ms. Black has failed to carry her burden of proving it was reasonable and necessary for her attorneys to spend 32.7 hours drafting the Reply Briefs. The Court finds, based on its own common sense and experience, that an attorney with the experience of Ms. Black's counsel could have reasonably completed the two Reply Briefs in 18 hours. This number represents a three-fold increase from the approximately six hours Ms. Black's counsel required to draft the 10-page Unfiled Reply Brief. This extra time accounts for the 9 additional pages of argument found in the two Reply Briefs and the extra research necessary in the early stages of considering these two issues. The 18 hours the Court finds reasonable represents 55% of the 32.7 hours Ms. Black requested. Both attorneys' time will be reduced by 45% of the hours they spent on the Reply Briefs. **This results in a reduction of 10.25 hours from Mr. Sanford's total and 4.45 hours from Mr. Gillespie's total.**

### c.      Calculation of the Supplemental Lodestar

Taking into account each of the reductions the Court has made to Ms. Black's request for attorneys' fees, the Court finds that 143.83 of the requested hours were incurred unreasonably. After making these reductions, Mr. Sanford reasonably expended

81.92 hours and Mr. Gillespie reasonably expended 112.07 hours. Multiplying Mr. Sanford's 81.92 hours by his hourly rate of $375 and Mr. Gillespie's 112.07 hours by his hourly rate of $450, the proper Supplemental Lodestar in this case is $81,1511.50.

Having established the Supplemental Lodestar, the Court will consider application of the *Johnson* factors for possible adjustment of this amount. Both parties have discussed the application of the *Johnson* factors in their briefing. SettlePou requests a significant reduction based largely on the results obtained. Ms. Black argues that the *Johnson* factors would support an enhancement of the Supplemental Lodestar, but ultimately she does not request an enhancement. The Court is of the opinion that the Supplemental Lodestar reasonably and adequately compensates Ms. Black for her attorneys' work in this case. *See Black*, 732 F.3d at 502 ("There is a strong presumption of the reasonableness of the lodestar amount."). The Court will not enhance or reduce the Supplemental Lodestar based on the *Johnson* factors.

### C.     Costs

The Court next considers Ms. Black's request for costs to be taxed against SettlePou. Ms. Black seeks $725.20 within her Fifth Circuit Bill of Costs, $274.07 for postage and delivery costs, $1,396.25 for travel expenses related to oral argument, and $1,175.00 for post-appeal mediation. Ms. Black argues that these are recoverable under 28 U.S.C. § 1920 ("Section 1920"), the FLSA, Fed. R. Civ. P. 54(d), Fed. R. App. P. 39, or because they are of the sort "normally charged to a fee paying client." *Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990). SettlePou does not contest the $725.20 the Fifth Circuit awarded pursuant to Fed. R. App. P. 39. SettlePou argues that none of the other requested costs may be awarded because they are not specifically enumerated in Section 1920. The Court **grants** Ms. Black's request for her Fifth Circuit Bill of Costs and **denies** her request for the remaining costs.

The Court does not agree with Ms. Black that *Associated Builders*, a case in which fees were sought under 28 U.S.C § 1988, controls in this case. The Supreme Court and Fifth Circuit have made clear that a federal court may only award costs included in Section 1920 unless there is explicit statutory or contractual authorization to the contrary. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987); *Cook Children's Med. Ctr. v. New England PPO Plan of Gen. Consol. Mgmt., Inc.*, 491 F.3d 266, 274 (5th Cir. 2007). Ms. Black cites to no authority that the language of the FLSA explicitly authorizes recovery of costs not included in Section 1920, and the Court's own

research has not produced any. The Court finds the Fifth Circuit's opinion in *Cook Children's Medical Center* instructive on this issue. In that case, the Fifth Circuit determined that the statute authorizing recovery of costs in an ERISA case did not explicitly authorize the award of mediation expenses. *Cook Children's Med. Ctr.*, 491 F.3d at 275. The ERISA statute states that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). This language is almost identical to the language Congress used in the FLSA, in which Congress mandated a prevailing plaintiff be awarded "a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id.* § 216(b). Because the language is so similar, *Cook Children's Medical Center* was decided 16 years after *Associated Builders*, and *Associated Builders* addressed a Section 1988 award, the Court finds that costs not specifically listed in Section 1920 are not recoverable by a prevailing FLSA plaintiff even if they are of the sort a lawyer would normally charge to a fee-paying client.

Having determined the FLSA does not expand Section 1920, the Court must determine if Section 1920 authorizes an award of any of the costs Ms. Black requests. Section 1920 authorizes a judge to tax as costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under Section 1923; and (6) compensation of court appointed experts or interpreters. 28 U.S.C. § 1920. Because they are not included in

Section 1920, the Court cannot award Ms. Black costs for postage and delivery, travel expenses, or mediation. Ms. Black will be awarded $725.20 in costs pursuant to Fed. R. App. P. 39. The Court **denies** Ms. Black's request for costs associated with postage, travel, and mediation.

Ms. Black's request for $725.20 in her Fifth Circuit Bill of Costs is **granted** as recoverable under Rule 39. Fed. R. App. P. 39. All other requested costs are **denied**. For the reasons stated above, the Motion for Attorneys' Fees is **GRANTED in part and DENIED in part**.

## IV.    CONCLUSION

For the reasons stated above, the Motion for Judgment is **GRANTED in part and DENIED in part** and the Motion for Attorneys' Fees is **GRANTED in part and DENIED in part**. The Court awards Ms. Black $11,873.79 in actual damages, $11,873.79 in liquidated damages, $313,552.31 in attorneys' fees, and $725.20 in costs. The Court awards post-judgment interest at a rate of 0.11 percent to run from the date of the judgment signed this same date.

**SO ORDERED**

Signed July 17th, 2014

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE